UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KRZYSZTOF DOROZ,

                Plaintiff,

    -v-                                          6:13-CV-1135

COLUMBIA PLACE ASSOCIATES LLC;
DIANE BENN, Recruiter/Specialist; and
GARRY SMITH, Director of Columbia Place
Associates job agency,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

KRZYSZTOF DOROZ, pro se
1399 Flagg Avenue
Utica, NY 13502

SMITH, SOVIK, KENDRICK & SUGNET, P.C.    KRISTEN M. BENSON, ESQ.
Attorneys for Defendants
250 South Clinton Street
Suite 600
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Krzysztof Doroz ("plaintiff" or "Doroz") initiated this civil action on September 12, 2013. On January 22, 2014, he filed an amended complaint in which he asserts various claims against defendants Columbia Place Associates, LLC ("CPA"), Diane Benn ("Benn"), and Garry Smith ("Smith") (collectively "defendants").

Liberally construing the amended complaint, which is made difficult due to plaintiff's *pro se* status, he brings the following claims: (1) employment discrimination based on his perceived disability in violation of the Americans with Disabilities Act ("ADA"); (2) employment discrimination based on his age in violation of the Age Discrimination in Employment Act ("ADEA"); (3) discrimination in violation of 42 U.S.C. § 1981; (4) employment discrimination based on his national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) a hostile work environment in violation of Title VII; and (6) retaliation in violation of Title VII.

On April 18, 2014, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff has responded in opposition, and defendants replied. The motion was considered on submit without oral argument.

## II. FACTUAL BACKGROUND

The following factual allegations, which are assumed true for purposes of the motion to dismiss, have been gleaned from the somewhat confusing amended complaint and informed by plaintiff's opposition to the pending motion.

CPA is a staffing agency located in Utica, New York. Benn is a recruiter at CPA, and Smith is her supervisor. Doroz, a native of Poland and resident of Utica, sought employment assistance from CPA in 2010. In April 2011 he was placed in a position at Indium Corporation ("Indium"). However, after working at Indium for a period of months, his employment was terminated despite the fact that he was qualified for the job and performed

---

[1] Alternatively, defendants seek to convert the motion to one for summary judgment pursuant to Rule 56. As the amended complaint was filed only three months prior to the pending motion and no discovery has been exchanged, defendants' invitation to convert the motion into one for summary judgment is declined.

satisfactorily. Plaintiff claims Benn and Smith were somehow responsible for his termination.

Nonetheless, Doroz continued to work at Indium for two more months, reportedly with the approval of that employer. In mid-October 2011 Benn advised him that his employment had again been terminated and instructed him not to return to Indium. She also threatened to call the police if he returned to Indium's facility.[2] Plaintiff protested and attempted to contact a manager at Indium to discuss the matter. Smith reportedly showed up at plaintiff's house unannounced, yelled at him in the driveway, and threatened to have him arrested if he contacted anyone at Indium. Plaintiff claims Benn failed to secure comparable alternative employment for him thereafter and instead found jobs in undesirable locations with lesser pay than he had earned at Indium. She also allegedly recruited American candidates with similar or lesser qualifications than plaintiff.

On October 15, 2012, Doroz lodged a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging employment discrimination by CPA generally and Benn and Smith specifically. In that complaint, he checked off the boxes for age and national origin discrimination as well as retaliation. See Benson Affirmation, Ex. A, ECF No. 20-2, 3.[3] He then provided a detailed narrative—which practically mirrors the allegations in the amended complaint, including the incident involving Smith allegedly yelling at him in his driveway—in which he claims Benn and Smith discriminated against him because he is Polish. The NYSDHR completed an investigation and concluded that "there is NO

---

[2] Doroz references a "Congratulate letter" Benn allegedly mailed to him on October 6, 2011, and a termination letter she sent on October 14, 2011. Am. Compl. ¶ 11. However, these documents are not attached to the amended complaint.

[3] As Doroz references this NYSDHR complaint in his amended complaint, it is properly considered for purposes of the motion to dismiss.

- 3 -

PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." Benson Affirmation, Ex. D, ECF No. 20-5, 2.

On April 16, 2013, Doroz filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  The EEOC adopted the findings of the NYSDHR investigation and issued a right-to-sue letter on June 14, 2013.  Plaintiff has since found employment unrelated to CPA or Indium.

## III. DISCUSSION

Doroz alleges that the termination of his employment at Indium was orchestrated by Benn and Smith, who then harassed him and failed to find him comparable alternative employment.  In his amended complaint, he claims these defendants were motivated by bias against his national origin, age, and perceived disability and because he had lodged a complaint with the NYSDHR.

Defendants argue that the amended complaint must be dismissed in its entirety because:  (1) The ADA, ADEA, and Title VII do not provide for individual liability; and (2) plaintiff's allegations fail to state any plausible substantive claims.  Doroz does not specifically respond to these legal arguments.

### A. Rule 12(b)(6) Motion to Dismiss—Legal Standard

Defendants seek dismissal of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required.  Indeed, "[w]hile legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers, 282 F.3d at 152. These pleading requirements apply to *pro se* plaintiffs as well as plaintiffs represented by counsel. Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004). However, particular deference should be given to a *pro se* litigant's complaint when applying the above standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Finally, a district court may consider documents attached to the complaint as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (internal quotation marks omitted).

## B. Individual Liability

Defendants correctly note that the ADA, ADEA, and Title VII do not provide a basis for individual liability. See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam) ("[I]n the context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in [42 U.S.C.] § 2000e-5, cannot provide for individual liability."); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)

("[I]ndividuals are not subject to liability under Title VII."); Wang v. Palmisano, __ F. Supp. 3d __, 2014 WL 5011099, at *12 (S.D.N.Y. 2014) ("[C]ourts in this circuit have consistently held that the ADEA does not impose liability on individuals.").

Accordingly, the ADA, ADEA, and Title VII claims asserted against Benn and Smith individually will be dismissed.

### C. ADA Claim

Doroz alleges defendants discriminated against him based on a perceived disability. It is noted that he did not include such a claim in the October 2012 NYSDHR complaint.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff asserting a violation of the ADA must prove the following elements:

> (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.

Kinneary v. City of N.Y., 601 F.3d 151, 156 (2d Cir. 2010) (internal quotation marks omitted).

Defendants correctly note that plaintiff has failed to identify the alleged mental or physical disability from which he suffers or was perceived to suffer. He merely alleges that defendants unlawfully caused his termination because of his "disability and/or a perceived disability." Am. Compl. 4. Such sparse allegations are insufficient to state a plausible claim for relief. Accordingly, the ADA claim will be dismissed.

### D. ADEA Claim

Doroz also alleges defendants discriminated against him based on his age. To state a prima facie case of age discrimination under the ADEA, a plaintiff must allege that: "1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003) (internal quotation marks omitted).

Doroz fails to identify his age in the amended complaint. However, in his NYSDHR complaint he indicated that he was born in February 1961, making him fifty years old at the time of his allegedly unlawful termination in October 2011. Assuming, *arguendo*, that such qualifies him for protected status under the ADEA, he still fails to state a plausible claim. Indeed, nothing in the amended complaint can be read to reasonably suggest defendants harbored any bias against plaintiff based on his age. There are no allegations of discriminatory remarks or that a younger employee was hired to fill his position at Indium. As with the ADA claim, he simply asserts defendants unlawfully caused him to be terminated because of his age. Such allegations fall far short of stating a plausible claim.

Accordingly, the ADEA claim will be dismissed.

### E. 42 U.S.C. § 1981 Claim

Doroz also asserts a discrimination claim pursuant to 42 U.S.C. § 1981. However, this statute prohibits discrimination based on race, ancestry, or ethnic characteristics—not mere national origin—in the making and enforcement of contracts. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987); Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998); Ghose v. Century 21, Inc., 108 F. Supp. 2d 373, 380 (S.D.N.Y. 2000), aff'd, 12 F. App'x 52,

55 (2d Cir. 2001) (summary order) ("We agree with the district court that 42 U.S.C. § 1981 does not prohibit discrimination on the basis of national origin.").

Plaintiff claims defendants discriminated against him because he is a native of Poland and speaks with an accent. Such does not constitute discrimination based on race, ancestry, or particular ethnic characteristics. Accordingly, the § 1981 claim will be dismissed.

### F. Title VII Claims

Doroz alleges defendants caused him to be terminated from his employment with Indium because he is a native of Poland and speaks with a heavy accent. He further claims they failed to find equivalent alternative employment for him, recruited American candidates with similar or lesser qualifications, created a hostile working environment, and retaliated against him. Defendants argue that the factual allegations in the amended complaint fail to state plausible Title VII claims.

#### 1. Discrimination based on National Origin

Title VII prohibits employers from discriminating against employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To bring an unlawful termination claim under Title VII, plaintiff must allege the following elements: (1) membership in a protected class; (2) satisfactory job performance; "(3) that he . . . was discharged under circumstances suggesting that national origin was a factor; and (4) that the employer hired or sought other applicants for the position." Song v. Ives Labs., Inc., 957 F.2d 1041, 1045 (2d Cir. 1992); see also Wright v. Goldman, Sachs & Co., 387 F. Supp. 2d 314, 324 (S.D.N.Y. 2005). An inference of discrimination can be established by a showing that plaintiff's position was ultimately filled by an individual who is not a member of plaintiff's protected class. Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

The allegations in the amended complaint establish the first two elements. Indeed, Doroz is a native of Poland who apparently speaks with a heavy accent. Further, he claims to have the requisite job qualifications and reportedly received positive feedback about his performance from his supervisor at Indium. However, he fails to allege any facts to suggest his national origin factored into the termination of his employment at Indium. There are no allegations that Benn or Smith, or anyone else at CPA, made disparaging statements about plaintiff's national origin or manner of speech. His assertion that defendants terminated his employment due to a bias against his Polish nationality is completely conclusory.[4]

Further, the fact that Benn—a professional recruiter at a staffing agency—recruited Americans for jobs available through CPA does not support an inference of discrimination. Plaintiff simply alleges that Benn recruited American candidates at an event at Mohawk Valley Community College after he had been terminated from Indium. He does not allege that any particular American candidate displaced his position at Indium. Although he asserts that defendants "prompted" Indium to hire "Jay Brox and other individuals"—assumed to be Americans with similar or lesser job qualifications than plaintiff—there are no allegations regarding the timing of such hires. Am. Compl., 8, ¶ 9. Nor does he claim that he competed for the same position as these other employees.

In short, plaintiff fails to allege any facts from which to reasonably infer that his national origin was a factor in the termination of his employment with Indium. Accordingly, the Title VII claim for discrimination based on national origin will be dismissed.

---

[4] It is also unclear what input, if any, defendants had on the decision to terminate his employment with Indium. CPA is merely a staffing agency, not the actual employer. However, for purposes of the motion to dismiss, it is assumed that defendants were responsible for the termination of employment.

## 2. Hostile Work Environment

Liberally construing the amended complaint, Doroz claims defendants subjected him to a hostile work environment in violation of Title VII.

To state a hostile work environment claim, a plaintiff must allege that the workplace was permeated with severe and offensive discriminatory conduct, intimidation, and ridicule. Vance v. Ball State Univ., __ U.S. __, 133 S. Ct. 2434, 2441 (2013); Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014); Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 144–45 (E.D.N.Y. 2013). This inquiry involves both an objective and subjective element: "the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Terry, 336 F.3d at 148; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

A court must consider the totality of the circumstances when applying this standard. Rivera, 743 F.3d at 20. Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Id. (internal quotation marks and alteration omitted).

Plaintiff must also show "a specific basis for imputing the conduct creating the hostile work environment to the employer." Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). For example, where plaintiff is allegedly harassed by a supervisor who is empowered by the employer "to take tangible employment actions against the victim," the employer is subject to vicarious liability for the hostile environment. Vance, 133 S. Ct. at 2443. These tangible employment actions include: "hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id.

The amended complaint does not detail the structure of the relationship between Doroz and CPA, i.e., whether Doroz was an "employee" of CPA. It is therefore unclear whether Benn and/or Smith, or anyone at CPA for that matter, was empowered to take tangible employment action against him or whether such authority rested solely with Indium. Regardless, there is nothing in the amended complaint to suggest defendants' alleged abusive conduct was indicative of discrimination. While plaintiff claims Benn repeatedly threatened to call the police if he returned to Indium and Smith reportedly yelled similar threats outside plaintiff's home, there is nothing to indicate such was motivated by discriminatory animus.

Such episodic conduct, unaccompanied by offensive slurs, derogatory language, or demeaning statements about plaintiff's national origin, are insufficient to state a plausible hostile work environment claim. See St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 333 (E.D.N.Y. 2014) ("Absent any evidence that Defendants were motivated by Plaintiff's religion in taking these personnel actions, these incidents do not contribute to the creation of a hostile work environment."); Goldschmidt v. New York State Affordable Hous. Corp., 380 F. Supp. 2d 303, 313 (S.D.N.Y. 2005) (defendants' conduct was not "accompanied by overt acts of insult or harassment based on plaintiff's religion" and therefore did not support a hostile work environment claim).

Moreover, these incidents occurred after his employment at Indium had ended, and thus could not have created a hostile workplace while he was employed. In sum, Doroz has failed to plausibly allege that defendants subjected him to a work environment permeated

with severe and offensive discriminatory conduct, intimidation, and ridicule.

Accordingly, the Title VII hostile work environment claim will be dismissed.

### 3. **Retaliation**

Finally, Doroz claims defendants endeavored to have him terminated in retaliation for his complaints to the NYSDHR. These allegations are not entirely clear. Plaintiff apparently disclosed on his initial CPA application that he had filed a complaint with the NYSDHR against a former employer. It is unclear whether he is alleging that defendants retaliated for this disclosure or for the NYSDHR complaint he lodged against Benn and Smith in October 2012.

In order to state a *prima facie* claim for retaliation under Title VII, plaintiff must allege:

> (1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (alterations in original) (internal quotation marks omitted).

Regardless of which theory of retaliation Doroz is attempting to assert, he fails to plead any factual allegations to suggest a causal connection between his NYSDHR complaints and the termination of his employment at Indium. Assuming defendants knew he had filed complaints against prior employers, it does not reasonably follow that such motivated them to find him a job at Indium and then immediately sabotage same. Nor is there any temporal relation between his prior NYSDHR complaints and the termination of his employment in 2011. Moreover, plaintiff reports that defendants offered him alternative employment, albeit for lesser pay, after his termination.

Finally, plaintiff's October 2012 NYSDHR complaint could not possibly have motivated his termination a year earlier. See Pinero v. Long Island State Veterans Home, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

Accordingly, the Title VII retaliation claim will be dismissed.

## IV. **CONCLUSION**

Doroz offers only conclusory allegations that the termination of his employment at Indium in October 2011 was motivated by discrimination based on his national origin, age, or perceived disability, or was taken in retaliation for his administrative complaints.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in its entirety; and

2. The amended complaint is DISMISSED.

IT IS SO ORDERED.

The Clerk of the Court is directed to close the file.

_____
United States District Judge

Dated: October 29, 2014
      Utica, New York.